In The United States District Court
For The District Of Delaware

Jason A. Hainey
       Petitioner,

V.

Perry Phelps,
Warden, And Attorney
General of The State
of Delaware,
      Respondents.

Civil Action No. 08-272-SLR



FILED

JUL - 9 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Defendant Below Appellant
Jason Hainey's Appendix to opening brief

Jason Hainey SBI 383182
DCC 1181 Paddock Rd.
Smyrna, DE 19977

Jason Hainey

Dated: 7/4/08

# Table of Contents

Table of citations............................................. Page iii

Nature and stage of the proceedings.................. Page 1.

Summary of argument.................................. Page 2-3

Statement of facts...................................... Page 4-7

Argument section....................................... Page 8-43

## Arguments

I. The petitioner's sentence should be vacated due to the facts which give rise to the appearance of judicial bias/abuse of discretion when trial judge allowed a gun in as evidence that had no established nexus to the crime violating the petitioner's rights under the due process clause of the fourteenth amendment...Pg. 8-14

II. Ineffective assistance of counsel for failing to present the fact/argue or object that prosecution used misleading/perjured testimony and also misrepresented evidence to convict the defendant. Violating the petitioner's rights to effective assistance of counsel, due process and equal protection of the laws. (6th and 14th amendments) Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254 (d)(1) and (d)(2)...Pg. 15-22

III. Ineffective assistance of counsel for failing to interview or subpoena a key witness violating the defendants 6th and 14th amendment rights of effective assistance of counsel and due process. Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254 (d)(1)(d)(2)........ Pg. 23-29

IV. Ineffective assistance of counsel for failing to file a motion 29 on all charges in support of motion in limine, misleading/perjured testimony and a lack of overall evidence. Violating the defendants 6th and 14th amendment rights of effective assistance of counsel and due process. Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254(d)(2). . . . . . . . Pg. 30-35

V. The jury's verdict was not supported by sufficient evidence. Violating the defendants 14th amendment of due process and equal protection of the laws. Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254 (d)(1) and (d)(2). . . . . . . Pg. 36-43

# Table of Citations

A.B.A Standard for Criminal Justice 4-4.11 (2d. Ed 1980) ("The defense function")

Bromwell v. State, Del. Supr., 427 A.2d 884, 893 n. 12 (1981)

Delaware Rules of Evidence 103    (D.R.E 103)

Delaware Rules of Evidence 403    (D.R.E 403)

Delaware Rules of Evidence 901(a) (D.R.E. 901(a))

Farmer v. State 698 A.2d 946

Federal Rules of Evidence 901(a)  (F.R.E. 901(a))

Dutton v. State, Del. Supr., 452 A.2d 127, 146 (1982)

Gordon v. State Del. Supr., 604 A.2d 1367, 1368 (1992)

Lopez v. State Del. Supr. 2004 WL 2743545

Loed v. Wood 184 F.3d 1083

Mesarosh v. United States 352 U.S. 1, 77 S.Ct. 1

Napue v. Illinois 360 U.S. 264 79 S.Ct. 1173

Nealy 764 F.2d at 1180

Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052

Superior Court Criminal Rule 29

United States v. Agurs 1975, 427 U.S. 97, 103, 96 S.Ct 2392, 49 L.Ed. 2d 342

Wainwright v. State 504 A.2d 1096

## Nature and Stage of the Proceedings

On the date of June 15, 2006, the defendant filed a motion for Post Conviction Relief in Superior Court New Castle County. On the date of September 24, 2007 Judge William C. Carpenter Jr. denied the defendant's motion. Then on the date of October 9, 2007 the defendant filed a notice of appeal to the Supreme Court of Delaware appealing the Superior Court ruling. On March 31, 2008 the Supreme court affirmed the Superior Court's ruling. On May 14, 2008 the petitioners habeas corpus was filed.

Pg. 1

## Summary of Argument

I. Judicial bias/abuse of discretion when trial Judge allowed a gun in as evidence that had no established nexus to the crime. Ballistics test came back inconclusive. (see; A-1 date 1/9/04 T.S pg. 23 + 61 for state. And defense ballistic Experts conclusion) Also, on the date of Feb. 3, 2004 an incomplete balancing analysis to determine relevancy of evidence. was held. The balancing analysis should and could have been completed by corroborating the testimony that was given. Had this been done there would have been no grounds in which to make the gun admissable.

II. Ineffective assistance of counsel for failing to present the fact/ argue or object that prosecution used misleading/prejudiced testimony And also misrepresented evidence to convict the defendant.
During an balancing analysis to determine relevancy of evidence the state offered testimony from a detective that claimed a state witness linked the defendant to the gun in question by telling him that said gun was the defendants upon recovery of the gun. Based solely on that testimony from the detective the trial judge allowed the gun to become admissable evidence. Only later to have the foundation on which the gun was admitted destroyed when the state witness later testified that he never told the police who the gun belonged to. Counsel never objected to this discrepancy or argued it on direct appeal.

III. Ineffective assistance of counsel for failing to interview or subpoena a key witness. Witness would have rebutted witness

Pg. 2

account of the events leading up to the crime and events thereafter.

IV. Ineffective assistance of counsel for failing to file a motion 29 on all charges in support of the motion in limine, misleading/perjured testimony and a lack of overall evidence. Trial counsel stated that he didn't think he could meet the Rule 29 standard that is why he did not file it. But this reasoning is contradictory considering the fact that on direct appeal counsel argued that; The jury's verdict was not supported by sufficient evidence.

V. The state of Delaware presented insufficient evidence at the defendants February 2004 New Castle County Superior court jury trial for a rational trier of fact to find all of the essential statutory elements of each of the five criminal charges beyond a reasonable doubt.

## Statement of the facts

During the early morning hours of 3/13/03 Earl Evans sat in an interrogation room at the Delaware State police troop 2. A few hours earlier, he had been arrested for robbing a liquor store in the Newark area. He was facing serious jail time. The interrogation was recorded on videotape & through reading the transcripts of his police statement it is obvious not only did Evans not want to spend alot of time in Jail but he would also do anything to avoid responsibility for his actions. In a effort to avoid as much jail time as possible, Evans told the police that he could solve a murder for them, if they would do something for him on the robbery charges. Evans eventually told the police that Jason Harvey (the defendant) committed a murder back in August 2001 in Wilmington's Southbridge area; that the defendant was driven to the crime scene by a man named Maria Tann; And that the police already had the murder weapon, having seized a gun from Evans apartment while conducting another investigation — a robbery at the Abbey Walk apartments in New Castle County which occurred 9/12/01. He told them facts about the murder that only someone associated with the crime would know, such as the number of shots fired & the position of the body. The police then located Maria Tann serving a jail sentence in Virginia. He was interrogated & told basically the same story, blaming the shooting on the defendant. Tann had the most to fear about being blamed for the murder.

P. 4

He had been questioned about a week after the murder during a surprise visit from the police (SEE A-10 T.S. pgs. 88-92 ) (Dated 2/4/04:) The police had traced a phone call from Taui's phone to Mercer's (the victim) cellphone shortly before the murder. During that 2001 interview/interrogation, Taui had admitted knowing the victim, Taui went on to tell the police that he was aware that the victim sold bootleg CD's. Taui told police he called Mercer to discuss a time when he could buy CDs from him.

Since the murder occurred during the daytime, & Taui's car was parked on the street near the victims house, Taui had to be concerned that someone could identify his car as being near the scene of the crime. Taui also knew that it was his gun that was used to kill the victim. Taui who was facing unrelated robbery charges back in Delaware, also had reasons to blame the defendant for the murder. A; To throw blame off of himself, and B; To strike a deal with the prosecution to reduce his sentence on the robbery charges. The States case was based almost entirely on the stories of these two motivated characters, Masia Taui & Earl Evans, neither of whom could be called a creedible witness. Yet the state claimed that their stories were believable for three reasons: 1; The stories were consistent, 2; some of what they said was corroborated by other evidence, and 3; Evans & Taui did not have the opportunity to get together & create a story. At the conclusion of the state's case, the evidence shared only that Taui & Evans had consistent stories only to the extent that they described the murder in the same way.

Pg. 5

In regards to the facts leading up to the murder & what occurred after the murder, their stories contradicted on literally every turn.

Insofar as the State sought to present evidence that corroborated their story, they were only able to corroborate the facts relating to the actual murder — i.e, the victim was shot 6 times. The defense took the position that Evans was probably the person who shot Mercer, that he was assisted by Tawn & they both knew the facts relating to to the actual shooting because they were there & committed the offense, & that they had plenty of opportunities to create a story blaming the shooting on the defendant, should the need ever arise. (see A-10 date 2/4/04 T.S pgs 69-72 for opportunities to concoct their story)

By the time the evidence concluded, the jury had learned that Tawn & Evans had good reason to throw the blame off themselves & onto the defendant & had plenty of opportunities to concoct a story. The jury also heard that once Evans & Tawn were asked to recount facts leading up to the shooting, as well as what happened after the shooting, their stories were substantially different. Moreover none of the State's other witnesses provided any support for the credibility of Tawn & Evans. After nearly 3 days of deliberations, the jury sent a note indicating that they were deadlocked 6-6 (see A-22 date 2/4/04 T.S. pgs. 2-9)

One day later without the benefit of reviewing the transcripts of testimony given or any other evidence, the jury came back with a verdict & the defendant was

Pg. 6

Convicted on all counts. (See A-28 dated 2/11/04 for request to review portions of testimony via transcript, + see A-22 date 2/12/04 for verdict.) + T.S pgs. 2-6.

The jury returned for the penalty phase. After hearing the evidence, a majority of the jury voted that the mitigating factors outweighed + aggravating factors by a vote of 7-5. The defendant was sentenced by the court on 5/14/04 + recieved a life sentence.

## Ground: ONE

The petitioner's sentence should be vacated due to the facts which give rise to the appearance of Judicial bias/abuse of discretion when trial judge allowed a gun in as evidence that had no established nexus to the crime violating the petitioner's Rights under the due process clause of the fourteenth amendment.

## Factual Background

On the date of January 9, 2004 defense counsel Jerome Capone argued a motion in limine to exclude reference, to a gun seized from state witness Earl Evans' Apartment. (In a seperate incident from which the defendant was on trial)

Both, state ballistic expert Walter Dandridge and Defense ballistic expert William Welch, conceded that they could not conclusively match the bullets found at the crime scene to the gun in question. (see; A-1 date 1/9/04 T.S pg. 23 for W. Dandridge conclusion And A-1 date 1/9/04 T.S pg. 61 for W. Welch conclusion )

Accordingly, the court granted the defendants motion in limine, Stating in part, "Simply put, there is no way to identify the seized firearm as the murder weapon by ballistic testing." (see; A-00 dated 1/20/04 motion in limine ruling )

Then on the date of February 3, 2004 a balancing analysis to determine relevancy of evidence was held because the state was still trying to get the gun in question in as admissable evidence, at which time detective Spillan testified that upon recovering a gun from state witness Earl Evans Apartment, Evans' stated that

Pg. 8

the gun found was the defendants. (SEE, A-11 dated 2/3/04 T.S. pg. 35 )
Based solely on detective Spillow's balancing analysis testimony that
Evans linked the defendant to the gun in question, the trial
Judge allowed the gun to be offered as evidence. (SEE, A-11 date
2/3/04 T.S. pgs. 52-57 )

Only later to be proved that detective Spillow's testimony was misleading/
perjured when state witness Evans testified that he never told the
police who the gun belonged to upon its discovery. (SEE, A-12 date
2/3/04 T.S. pgs. 75, 76 )


On the date of Feb. 11, 2004 the jury sent a note stating that they
were deadlocked after two days of deliberating (6-6), after being
told to keep deliberating the jury later sent another note requesting
to see portions of the testimony via transcript. That request was
denied. The very next day the jury returned with a guilty
verdict. (SEE, A-22 date 2/11/04 T.S. pgs. 2-9 for deadlock note; SEE, A-28
date 2/11/04 for request to view testimony via transcript And SEE, A-22
date 2/12/04 for verdict )


## Petitioner's Exhaustion of State Remedies


The claim for relief was presented to the superior court for Post
Conviction relief (SEE, A-31 for briefs ) And on appeal thereof to the
Supreme court (SEE, A-32 for brief ) The defendant argued that ~~because~~
the trial court abused his discretion by allowing a gun that had
no established nexus to the crime in as evidence. Violating the
Petitioner's 14th amendment right to due process.


Pg. 9

## Court's Decisions

In the Superior Court's ruling of the defendants Post Conviction relief, it was held that; "the defendant failed to object to these issues at trial or to raise them on direct appeal, and is thus barred under rule 61 (i)(3) from raising them now. Additionally, Mr. Hainey failed to show cause or prejudice in any of these claims."

The Supreme Court ruled that this claim was procedurally barred because it was previously adjudicated. (See A-34 for Superior and Supreme Court rulings)

## Entitlement to Relief under 28 U.S.C. § 2254; Unreasonable application of Clearly Established Federal law

The petitioner's petition for a writ of habeas corpus was filed on May 14, 2008. Therefore, the provisions of the antiterrorism and effective death penalty act ("AEDPA") apply, and the standard of review is controlled by 28 U.S.C. § 2254 (d) which states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State Court Proceedings unless the adjudication of the claim, (1) Resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.

The petitioner asserts that a violation of 2254(d)(2) occurred in this claim.

This claim was denied by the state courts' because it was believed that the defendant failed to object at trial or raise during direct appeal. But the denial of this claim for those particular reasons were an unreasonable determination of the facts because counsel did object/argue that the gun should not come in as evidence after the balancing & analysis testimony. (see A-11 date 2/3/04 T.S. pgs. 47-55 particularly 51-52 ) Moreover the defendant showed cause and prejudice. The cause being the misleading/perjured balancing analysis testimony that led to the unlinkable gun being admitted as evidence which prejudiced the defendant.

It is clear that ~~that~~ the gun in question was allowed to be admitted as evidence because of the assumption that Evans would be able to link the defendant to the gun by corroborating detective Spillar's balancing analysis testimony. But when Evans failed to corroborate detective Spillar's claim, all basis for the reason of the guns admission is destroyed. It is also clear that the trial judge made plain error and abuse of discretion by hanging his decision to allow inadmissable evidence in from the sole ~~admission~~ testimony of detective Spillar, with clearly establishing it to be "absolute fact," during his analysis, as stated in D.R.E 403, and not speculating.

The defendant argues that had the trial judge included the testimony of state witness Earl Evans into the balancing analysis to determine relevancy of evidence there would have been no choice but to make the gun inadmissable evidence.

Pg. 11

The trial judge even went as far as to say; "The representation I thought was going to be much stronger as to the state's ability to connect the gun to Mr. Hainey. And some, some additional effort by the law enforcement agencies to connect him would have been helpful, but thats not what we have here." (see A-11 date 2/3/04 T.S. pgs 52,53 )

As state in Farmer v. State 698 A.2d 946; Handgun seized from defendants apartment five days after shooting was irrelevant and inadmissable without nexus connecting gun to charged offense of attempted murder 1st degree, even if inference was permitted that defendant possessed the gun before the shooting, and even though similar gun was used in shooting; state could not link gun to shooting, and gun varied in appearance from gun described by state's witness.

Further stated in Farmer; where unwarranted inference reflect adversely on defendant by portraying him as having "a gun" available to him, without establishing that the gun in question is the murder weapon admission of the gun was abuse of discretion in violation of D.R.E. 901 (a) and D.R.E. 403. ( D.R.E. 901 (a) tracks F.R.E. 901 (a) )

The defendant has established that the state could not link the gun in question to the shooting (see A-1 date 1/9/04 T.S. pg. 23 & let for state and defense ballistic experts conclusions; see A-00 date 1/20/04 for ruling on motion in limine )

The defendant has also established that the state could not link the gun in question to the defendant. (see A-11 date 2/3/04 T.S. pg. 35 for

Pg. 12

detective. Spillan's testimony that Evans linked the defendant to gun in question; See A-11 date 2/3/04 T.S. pgs. 47-57 courts ruling considering gun based on Spillan testimony; And see A-12 date 2/3/04 T.S pgs. 75, 76 Evans testimony destroying foundation on which the gun in question was admitted. )

The defendant contends that even if he waived this issue by not objecting at trial or raising on direct appeal, Rule 103 of the Delaware rules of Evidence allow the appellate court to take notice of "plain Errors affecting substantial rights" of the parties on appeal, even though the error was not brought to the attention of the trial court.

Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Dutton V. State, Del. Supre., 452 A.2d 127, 146 (1982)

Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundemental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest-injustice. Bromwell v. State, Del. Supre., 427 A.2d 884, 893 n. 12 (1981) Quotes taking from Wainwright v. State 504 A.2d 1096

Defendant asserts that he has clearly established through the record the deperivation and prejudice to substantial rights that has jeopardized the fairness and integrity of the trial process

The State would be hard pressed to argue that had the gun in question been ruled inadmissible. the state would have still secured a guilty verdict, Especially in light of the case being purely

Circumstantial and also being so close. (Jury sent a note after 2 days of deliberating stating that they were deadlocked 6-6; SEE A-22 date 2/11/04 T.S. pgs. 2-9 )

"A verdict or conclusion only weakly supported by the Record is more likely to have been effected by errors than one with overwhelming record support. (see Id at 696, 104 S.Ct )(Strickland )

The petitioner hearby requests and prays that the court reverse and remand his conviction or any other relief to which the petitioner may be entitled.

## Ground: Two

Ineffective assistance of counsel for failing to present fact/argue or object that prosecution used misleading/perjured testimony and also misrepresented evidence to convict the defendant. Violating the petitioners rights of effective assistance of counsel, due process and equal protection of the laws. (6th and 14th amendments) Denial of this claim was an unreasonable application of clearly established federal law under Revised § 2254 (d)(1) and (d)(2)

## Factual Background

On the date of Jan. 9, 2004 defense counsel Jerome Capone argued a motion in limine to exclude reference to a gun seized from state witness Earl Evans Apartment. (In a seperate incident from which the petitioner was on trial) Both, state and defense ballistic experts conceded that they could not conclusively match the bullets found at the crime scene to the gun in question (see; A-1 dated 1/9/04 T.S pg. 23 and 61 for state and defense ballistic experts conclusion)

Accordingly the court granted the motion in limine. (see; A-00 dated 1/20/04 courts ruling on motion in limine )

Because the actual admissability/inadmissability of the gun had not been established, the court held a balancing analysis to determine relevancy of evidence on Feb. 3, 2004. At which time detective Spillan testified that upon Recovering a gun from state witness Earl Evans Apartment, Evans stated that the gun found

Pg. 15

was the defendant's (see, <u>A-11 dated 2/3/04 T.S. pg. 35 for Spillon allegation</u>) Based solely on detective Spillon's balancing analysis testimony that alleged Evans would or did link the defendant to the gun, the trial judge allowed the gun to be offered as evidence. (See, <u>A-11 dated 2/3/04 T.S. pgs. 47-57 courts ruling</u>)

Almost immediately after the balancing analysis and admissability of the gun trial resumed and state witness Earl Evans testified that he never told the police whom the gun belonged to upon its discovery. Effectively destroying the foundation on which the gun was admitted (see, <u>A-12 date 2/3/04 T.S. pgs. 75 & 76 Evans</u>)

On the date of Feb. 11, 2004 the jury sent a note stating that they were deadlocked 6-6, and had been for the majority of two days, before coming back the very next day with a verdict of guilty; despite not being able to review portions of testimony via transcript as they requested. (See, <u>A-22 dated 2/11/04 for jury's deadlock note</u>, then see, <u>A-28 date 2/11/04 for request to review testimony</u> and see, <u>A-22 dated 2/12/04 for verdict</u>)

## <u>Petitioner's Exhaustion of State Remedies</u>

The claim for relief was presented to the Superior Court for Post Conviction relief (see, <u>A-31 to see briefs</u>) And on appeal thereof to the Supreme Court (see, <u>A-32 to see brief</u>) The defendant argued that because counsel failed to present the fact or argue that the prosecution used misleading/prejudiced testimony and misrepresented evidence his 6th and 14th amendment rights were violated; Effective assistance of counsel, due process and Equal protection of the laws.

## Courts Decisions

The Petitioner amended this issue with his reply brief to the Superior Court, yet the court failed to deny, grant or even acknowledge this issue despite it being filed before the court's ruling on the Post Conviction motion (see; <u>A-29 No. 91-93 docket sheet showing motion to amend filed and Court's lack of acknowledgment before deciding on Post Conviction</u>; and see; <u>A-   to see amended brief</u>   )
The defendant then re-filed the amended motion when he put in his opening brief to the Supreme Court, explaining that the superior court never acknowledged the initial amended motion. The Supreme Court accepted the motion, but never made a <u>direct</u> ruling concerning this issue, ruling that; "Because Harvey has failed to demonstrate that either his trial counsel or his appellate counsel committed errors resulting in prejudice to him, we conclude that his claims of Ineffective assistance are also unavailing."
(See; <u>A-34 for both state court rulings</u>  )

## Entitlement to Relief under 28 U.S.C § 2254; Unreasonable Application of Clearly Established Federal law

The petitioner's petition for a writ of habeas corpus was filed on May 14, 2008. Therefore, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply, and the standard of review is controlled by 28 U.S.C § 2254 (d) which states:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated

on the merits in State Court Proceedings unless the adjudication of the claim, (1) Resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Petitioner asserts that a violation of <u>both</u> § 2254(d)(1) and (d)(2) occurred in this claim.

The two pronged <u>Strickland</u> (<u>Strickland v. Washington 466 U.S. 668, 104 S.ct. 2052</u>) test has two components: First, the defendant must show that counsels performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the sixth amendment.

The defendant contends that counsel's deficient performance was clearly established by first showing that, the state offered misleading/Perjured testimony that in turn allowed a gun that had no established nexus to the crime, nor could be linked to the defendant in as evidence, followed by the defense counsels failure to object during trial or bring forth on direct appeal the misleading/ Perjured testimony and misrepresentation of evidence claims.

Documents plainly show that the gun in question could not be linked to the crime. (see; <u>A-1 dated 1/9/04 T.S. pg. 23</u> and (1) <u>ballistic experts' conclusion</u> and, <u>A-00 dated 1/20/04 courts ruling on motion in limine.</u>) Nor could the gun be linked to the defendant. (see; <u>A-12 dated 2/3/04 T.S. pgs. 75 & 76 Evans</u> )

Documents also show how the court was misled into believing that the state could connect the defendant to the gun in question

<u>Pg. 18</u>

(see; A-11 dated 2/3/04 T.S. pg. 35 for Spillar allegation; see A-11 T.S pgs. 47-57 for court ruling based on that testimony; see A-11 T.S pgs 16-63 for majority of the balancing analysis hearing )

Because counsel failed to object or argue on direct appeal ~~that~~ that the state offered misleading/perjured testimony and misrepresented evidence, establishes that counsel was not functioning as the "counsel" guaranteed defendant by the sixth amendment.

Second, Defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial.

The defendant met this requirement by showing that <u>because</u> of the previously mentioned violations of his 6th and 14th amendment rights, a gun was allowed to be introduced as evidence. that had no established nexus to the crime and could not be linked to the defendant. Had counsel objected to admission of the gun and testimony, after it became obvious that the state didn't have a sufficient link to connect the defendant and gun there is a reasonable probability that the gun would have been deemed inadmissable, especially in light of the fact that the <u>sole</u> reason for the gun's admittance was the assumption that state witness Earl Evans could/would link the defendant to the gun in question.

Furthermore the deprivation of a fair trial is further bolstered by the fact that after two days of deliberations, the jury sent a note stating that they were deadlocked 6-6 (see; A-22 date 2/11/04 ) After being told to keep deliberating the jury came back the very next day with a guilty verdict despite not being able to review testimony via transcript as requested. (see; A-28 date 2/11/04 for request); and see; A-22 date 2/12/04 for verdict )

Pg. 19

"A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support" Strickland, 466 U.S. at 696, 104 S.ct. 2052.

The state may argue that the jury had the opportunity to see "inconsistencies" in testimony through cross-examination and it is the sole province of the fact finder to resolve any inconsistencies ~~and that~~ in witness testimony.

But the defendant contends that the balancing analysis (which led to the admissability of the gun) was held outside of the jury's presence, therefore it was impossible for the jury to know the significance of the misleading/perjured testimony and what it entailed. So it would matter very little if the jury learned of the perjury through cross-examination, because the inference that this was the weapon used was already made with the admissability of the gun. Hence, creating speculation and speculation creates prejudice.

The principle that a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of truthfulness and reliability of a given witness may well be determinative of guilt or innocence; and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendants life or liberty may depend. (see, Napue v. Illinois 360 U.S. 264, 79 S.ct. 1173

It cannot be said with absolute certainty that had counsel objected to these descreepencies the outcome of the trial would have been the same. "A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." (see Id at 154, 92 S.ct 766); see United State v. Agues, 1975, 427 U.S. 97, 103, 96 S.ct 2392, 49 L.Ed. 2d 342.

A conviction obtained through use of false testimony, known to be such by representatives of the state, is a denial of due process, And there is also a denial of due process, when the state, though not soliciting false evidence, allows it to go uncorrected when it appears. (Napue v. Illinois 360 u.s. 264, 79 S.ct 1173)

The defendant contends that the state had to know misleading/ Perjured testimony was given, And defense counsel had to know as well, the moment Evans contradicted detective Spillars testimony which led to a blatant contradiction of the grounds on which the gun was admitted. Yet the state never moved to correct or remedy this descreepancy and defense counsel never objected to this prejudice nor argued on direct appeal this miscarriage of justice violating the defendants 6th and 14th amendment rights.

Dignity of the united States Government will not permit conviction of any person on tainted testimony (see; Mesarosh v. united States 352 u.s. 1, 77 S.ct.1)

In closing the defendant believes that the issues argued in this ground was a deprivation of rights guaranteed him by the constitution of the united States, is that the defense counsel failed to object or argue that the Delaware Prosecuting authorities

obtained a conviction by the presentation of testimony known to be perjured/misleading and that testimony in turn allowed evidence to be introduced that had no nexus to the crime, nor could be linked to the defendant. These allegations are proven and supported by the exhibits referred to in this ground and nowhere are they *sufficiently* refuted or denied. The record of the petitioner's conviction, while regular on its face, manifestly does not controvert the charges that misleading and perjured evidence was used.

Had this issue been handled properly, the defendant would not have been held accountable for violations of crimes which he was not guilty, and the illegal convictions and life sentences would have been vacated.

The untainted administration of justice is clearly one of the most cherished aspects of our institutions. It's one of our most proudest boasts. Therefore, fastidious regard for the honor of the administration of justice requires the court to make certain that the doing of justice be made so manifest that only irrational or perverse claims of it's disregard can be asserted.

The petitioner hereby requests and prays that the court reverse and remand his conviction or any other relief to which the petitioner may be entitled.

## Ground: Three

Ineffective assistance of counsel for failing to interview or subpoena a key witness violating the defendants 6th and 14th amendment rights of effective assistance of counsel and due process. Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254(d), and also an unreasonable determination of the facts in light of the evidence and facts presented in the Post Conviction proceedings.

## Factual Background

On the date of February 4, 2004 state witness Monio Tami testified that, Phil "Fee" Kizee was in a car with him, Earl Evans and the defendant after the murder of Micheal Mercer on the date of August 21, 2001. (see A-10 dated 2/4/04 TS pgs 73, 74)

At which time the defendant allegedly admitted to killing Mercer. Kizee was interviewed at the police station about this incident in Glassboro, New Jersey. (see A-26 dated 5/29/03 + 6/05/03)

During this interview Kizee basically stated that he knew nothing of this particular incident. (The defendant read Kizee's statement during trial and has vigorously tried to obtain this interview for his supporting facts, but has been continuously ignored. See A-24 letters to counsel + court requesting Kizee's Police statement)

Kizee was never called to testify to corroborate Tami's testimony

Pg. 23

despite being listed as a witness for the state, and Kizee was never interviewed or subpoena'd to testify by defense counsel. The defendant was found guilty and subsequently sentenced to life in prison.

## Petitioner's Exhaustion of State Remedies

The claim for relief was presented to the superior court for Post Conviction Relief (see **A-31 for Petitioner's brief**) and on appeal thereof to the Supreme Court (see **A-32 Petitioner's brief**) The defendant argued that because counsel failed to interview or subpoena a Key witness that would have rebutted the state's chief witness' testimony, his 6th & 14th amendment rights were violated, Right to due process and Effective assistance of counsel.

## Courts' decision

In the Superior Court's ruling of the defendant's Post Conviction relief, it was held that; "Counsels' failure to interview and subpoena Phil Kizee does not qualify as objectively unreasonable. Counsels' affidavits cites numerous attempts to contact Mr. Kizee. Not only was Kizee unresponsive to counsel's requests, but his criminal history made him a less than desirable witness. Thus, counsels' decision not to subpoena Kizee was a tactical one. Second, even if counsels' conduct had been deemed unreasonable, Mr. Harvey's claim does not satisfy the prejudice prong of Strickland.

Harvey alleges that Kizee's testimony would have contradicted that of the state's witnesses. While this is mere conjecture on Mr. Harvey's part, it is clear that if Kizee was found and testified, that his testimony would have placed Mr. Harvey in an even less desirable light, as he had told counsel that he and Kizee had been involved in similar armed robbery conduct in the past. The potential danger of Kizee's testimony far outweighed any potential benefit. Thus, the defendant's first ineffective assistance of counsel claim fails.

The Supreme Court held that; The defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal. Because Harvey has failed to demonstrate that either his trial counsel or appellate counsel committed errors resulting in prejudice to him, we conclude that his claims of ineffective assistance are also unavailing. (see _A-34 for Superior and Supreme courts' rulings_ )

<u>Entitlement to Relief under 28 U.S.C § 2254:</u>
<u>Unreasonable Application of clearly Established Federal law</u>

The petitioners petition for a writ of habeas corpus was filed on May 14, 2008. Therefore, the provisions of the Antiterrorism + Effective death penalty Act ("AEDPA") apply, and the standard of review is controlled by 28 U.S.C § 2254 (d) which states: (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state Court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —

Pg. 25

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that a violation of both § 2254 (d)(i) & (d)(2) The two pronged Strickland test has two components: First, the defendant must show that counsel's performance was deficient, Requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the sixth amendment.

This requirement was met by showing that the trial counsel never interviewed/subpoenaed Kizee to testify despite Taw testifying that Kizee was present when the defendant allegedly admitted to killing Meacer, And despite the fact that Kizee denied knowing about what Taw was alleging during his police statement. This error was even more damaging considering the states whole case literally hung on the veracity of Taw & Evans, Therefore Kizees testimony was all the more important because the case was virtually the defendants word against the states two witnesses.

"A lawyer who fails to adequately investigate and to introduce into evidence, information that demonstrates his clients factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, Renders deficient performance. (See Lord v. Wood 184 F. 3d 1083)

Pg. 26

At a minimum counsel has a duty to interview potential witnesses and to make a independent investigation of the facts and circumstances of the case. The duty is reflected in the A.B.A. Standard for criminal Justice 4-4.11 (2d.ed. 1980) ("The defense function")

Second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial.
The defendant established the second component by showing that Kizee was the only person outside of the defendant who could directly contradict Tam's testimony, and by not calling on Kizee to testify counsel left the jury to believe that the account offered by the state's witness were true since it was never sufficiently challenged. Had Kizee been called to testify, the state would have been hard pressed to recover from the damage done to the already inconsistent, motive oriented testimony of Tam & Evans. The defendant would like to add that the 6th amendment guarantees the right for a defendant to have a compulsory process for obtaining witnesses in his or her favor, meaning the right of a defendant to have the resources of the court (i.e. The subpoena power) utilized on his behalf to compel the appearance of witnesses before such court.
This constitutional right was violated the moment counsel neglected to subpoena Kizee. Furthermore the jury was deadlocked 6-6 after 2 days of deliberating (see A-22 dated 2/11/04 T.S pgs 2-9 for jury note) despite the defense not putting 1 single witness on the stand, aids the defendants argument that any error

Pg. 27

small or large could have been a determining factor in the jury's verdict.

"If the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create reasonable doubt. (see U.S. v. Agues 427 US 97, 113 96 S.Ct 2392, 2402, 49 L.Ed. 2d 342 (1976)

And, where testimony of missing witnesses directly contradicted prosecution witnesses and support defense theory of the case, defendant met his burden of showing prejudice. (see; Nealy 764 F.2d at 1180)


Counsel's reason for not securing Kizee's testimony is contradictory at best. First, counsel says that Kizee and the defendant engaged in criminal activity together (as allegedly told to him by defendant) and defendant was unable to help locate Kizee. Then in the same breath says he made several attempts to contact Kizee. (see, A-36 for counsel's affidavit) If it was a tactical decision not to call Kizee because of his alleged criminal activities, then why try to locate him at all. The defendant asserts that there was never any conversation involving Kizee's supposed criminal activity. As a matter of fact counsel assumed that because Kizee was listed as a witness for the state he would be testifying against the defendant, but once counsel read Kizee's police statement (during trial) and it became clear that the state was not going to call Kizee (Presumably because his police statement did not corroborate Tan's testimony) counsel then hastily tried to secure Kizee's testimony. (see, A-24 Letters' to counsel and court requesting Kizee's police statement, Requests went ignored)

Pg. 28

Defendant contends counsel should have done a thorough pretrail investigation and at least interviewed Kizee and then made his determination from there.

As stated in Lord v. Wood 184 F. 3d 1083; "We would nevertheless be inclined to defer to counsels judgment if he had made the decision not to present the 3 witnesses after interviewing them in person. Few decisions a lawyer makes draw so heavily on professional judgement as whether or not to proffer a witness at trial. A witness testimony consist not only of the words he speaks or the story he tells, but also of his demeanor and reputation. A witness who appears shifty or biased and testifies to x may persuade the jury that not x is true and along the way cast doubt on every other piece of evidence proffered by the lawyer who puts him on the stand. But counsel cannot make such judgements about a witness without looking him in the eye and hearing him tell his story." Also in lord; "Counsel is not obligated to interview every witness personally in order to be adjudged to have performed effectively; However where a lawyer does not put a witness on the stand, his decision will be entitled to less deference than if he interviews the witness, because a lawyer who interviews the witness can rely on his assessment of their articulateness and demeanor, factors which a reviewing court is not in a position to second guess."

Defendant asserts that counsel did not put 1 single witness on the stand during the guilt phase of the trial.

In light of the fact asserted, the petitioner requests and prays that the court reverse & remand his conviction.

Pg. 29

## Ground: Four

Ineffective assistance of counsel for failing to file a motion 29 on all charges in support of motion in limine, misleading/ Perjured testimony, And a lack of overall evidence. Violating the defendants 6th and 14th amendment rights of ineffective assistance of counsel and due process. Denial of this claim was an unreasonable application of clearly established Federal law under revised § 2254(d), And also an unreasonable determination of the facts in light of the evidence and facts presented in the Post Conviction proceedings

## Factual Background

On the date of Jan. 9, 2004 defense counsel Jerome Capone argued a motion in limine to exclude reference to a gun seized from state witness Earl Evans Apartment. (In a seperate incident from which the petitioner was on trial) Both, state and defense ballistic experts conceded that they could not conclusively match the bullets found at the crime scene to the gun in question. (see; A-1 dated 1/9/04 TS. pg 23 & 61, for state and defense ballistic experts conclusion.) Accordingly on the date of Jan. 20, 2004 the court granted the defendants motion. (see; A-00 dated 1/20/04 courts ruling on motion in limine)

On the date of Feb. 3, 2004 during trial, a balancing analysis was to determine relevancy of evidence was held to establish if the gun in question would become admissable, at which time a detective Spillan testified that upon recovering a gun from Evans Apt.

Evans stated that the gun found was the defendants (see; A-11 dated 2/3/04 T.S. pg. 35 )

Based soley on detective Spillari's balancing analysis testimony that state witness Earl Evans linked the defendant to the gun, the trial judge allowed the gun to be offered as evidence, despite counsel's objection. (see; A-11 dated 2/3/04 T.S. pgs. 47-57 for court's ruling )

Shortly after the balancing analysis and the admissability of the gun, trial resumed. It was then that state witness Earl Evans testified that he never told the police who the gun belonged to upon it's discovery. Effectively destroying the foundation on which the gun was admitted. (see; A-12 dated 2/3/04 T.S. pgs. 75 + 76 Evans )

The state went on to offer consistently inconsistent and motive oriented testimony from there two chief witnesses. (see Ground five detailing insufficient evidence )

On the date of Feb. 11, 2004 the jury sent a note stating that they were deadlocked 6-6, and had been for the majority of two days, before coming back the very next day with a unanimous verdict of guilty, despite not being able to review portions of the testimony via transcript. (see A-22 dated 2/11/04 for jury's deadlock note; then see; A-28 dated 2/11/04 for request to review portions of testimony and see; A-22 dated 2/12/04 for verdict. )

## Petitioner's Exhaustion of State Remedies

The claim for relief was presented to the Superior Court for Post Conviction Relief. (see A-31 for Petitioner's brief(s) and on appeal thereof to the Supreme Court (see A-32 ~~opening and amended brief~~) The defendant argued that counsel failed to file a motion 29 on all

charges in support of the motion in limine, misleading/Perjured testimony, And a lack of overall Evidence. Failure to do so violated the defendants 6th & 14th amendment rights Right to due process + Equal protection under the law And Effective assistance of counsel.

### Courts Decisions

In the Superior Courts ruling of the defendant's Post Conviction relief, it was held that, "... Mr. Hainey's contention that his counsel was ineffective for failing to move for acquittal pursuant to Rule 29 fails the <u>Strickland</u> test as it is not objectively unreasonable conduct. Counsel provided ample explanation in their affidavits for the decision not to move for acquittal. In addition, the Court finds that even if the motion had been made, it would have been denied as the state had clearly established its burden when the evidence was considered in the light most favorable to them. Thus, Mr. Hainey cannot claim prejudice under the second prong of <u>Strickland</u>, and this claim also fails."
The Supreme Court ruled that, "To the extent that Hainey has not argued other grounds to support his appeal that were previously raised, those grounds are deemed waived and will not be addressed by this Court." (SEE <u>A-34 For Superior and Supreme courts' Rulings</u> )

### <u>Entitlement to Relief under 28 u.s.c. § 2254:</u>
### <u>Unreasonable application of Clearly established federal law</u>

The petitioner's petition for a writ of habeas corpus was filed
<u>Pg. 32</u>

on May 14, 2008. Therefore, the provisions of the antiterrorism and Effective Death Penalty Act ("AEDPA") apply, and the standard of review is controlled by 28 U.S.C. § 2254 (d) which states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim — (1) Resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the united States; or (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner asserts that § 2254 (d) (2) has been violated.

The two pronged _Strickland_ test has two components: First, the defendant must show that counsel's performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth amendment.

This requirement was met by showing that counsel failed to file a _Rule 29_ motion for judgment of acquittal, yet during direct appeal counsel argued that the jury's verdict was not supported by sufficient evidence (see A-33 for counsel's direct appeal brief) Now, the rules for a directed verdict or _Rule 29_ motion for judgment of acquittal are; "A motion for judgment of acquittal must be presented either before a case is submitted to a jury or within seven days of the jury's discharge. _Super. Ct. Crim. R. 29_ (Rule 29)          Pg. 33

A claim of insufficiency of evidence is reviewable only if the defendant first presented it to the trial court, either in a motion for a directed verdict or a Rule 29 motion for judgment of acquittal. Absent any such motion, the claim is waived." (see; Gordon v. State Del. Super, 604 A.2d 1367, 1368 (1992)

The counsel's reply brief in response to this claim of ineffectiveness during State Post-Conviction proceedings was; "While I felt this was a close case where we had a good chance for acquittal. I did not make a motion for judgment of acquittal because I did not think that we could meet the ruled 29 standard requiring that the states evidence viewed in the light most favorable to the state must be insufficient to sustain a conviction." (see A-36)

This explanation is puzzling and also contradictory considering the fact that on direct appeal counsel filed/argued that the jury's verdict was not supported by sufficient evidence. That rule states that, "Viewing the evidence in the light most favorable to the state, could a rational trier of fact have found the essential elements of the crime beyond a reasonable doubt?" (see: Lopez v. State, Del. Super., 2004 WL 2743545 )

So the question is, why did the counsel not think that he could meet the rule 29 standard, yet think that he could meet the insufficient evidence standard after he waived the option to argue the insufficient evidence claim by not filing the rule 29? The requirements for each go hand and hand. Thus, proving that counsel's performance was deficient and satisfying the first prong of the Strickland component.

Second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious

as to deprive defendant of a fair trial.

This requirement was met by first establishing that the state used misleading/perjured testimony that in turn allowed a gun to be introduced as evidence that had no established nexus to the crime nor could be connected to the defendant (that counsel failed to object too)(See; <u>Ground; 2 detailing that issue</u> ) That along with the motion in limine hearing where <u>both</u> state and defense ballistic experts conceded that they could not match the bullets at the crime scene to the gun in question and conclusively determine that they gun in question was the murder weapon, establishes that the state did indeed offer insufficient evidence. (See; <u>A-1 dated 11/9/04 TS. pgs. 23 & 61 for state and defense ballistic experts conclusion</u> ) Also the state's two chief witnesses offered motive oriented testimony that was consistently contradictory. (See <u>Ground; Five</u>

These issues are further bolstered by the fact that the jury sent a note stating they were deadlocked 6-6 after two days of deliberating before coming to a conclusion the very next day without the benefit of reviewing portions of the testimony via transcript as they requested. (see <u>A-22 date 2/11/04 for jury's deadlock note</u>; then see; <u>A-28 dated 2/11/04 for request to review testimony via transcript</u>; And; <u>A-22 date. 2/12/04 for verdict</u> )

The defendant contends that by counsel not bringing forth the issues outlined in this ground in the form of a Rule 29 motion for judgment of acquittal, he prejudiced the defendant of a fair trial. No rational trier of fact could have concluded that the defendant committed the charged offenses based on the evidence presented by the state. Petitioner hereby requests and prays that the court provides him with any relief that he may be entitled to.

Pg. 35

## Ground: Five

The jury's verdict was not supported by sufficient evidence. Violating the defendants 14th amendment of due process and equal protection of the laws. Denial of this claim was an unreasonable application of clearly established federal law under revised § 2254(d) Also, an unreasonable determination of the facts had been made in light of the evidence and facts presented at trial, direct appeal, and state Post-Conviction proceedings.

## Factual Background

A couple of years before the murder, Mkacen (the victim), the defendant and state witness Monia Tain had all worked at Citibank, located in New Castle, Delaware. The other state witness Earl Evans claimed to have never met the victim. Tain and Evans described the murder as a robbery committed by the defendant which had gone away.
The story that Tain and Evans gave had 3 parts; (A) The events leading up to the murder, (B) The details of the murder, And(C) The events after the murder.
Being as though this case was purely circumstantial it was in the states interest to corroborate each part of their story.

According to Evans testimony there had been <u>two</u> trips to New Jersey on the day of the murder. The first, allegedly being before the murder in which Evans, Tain and the defendant drove to New Jersey at some point during the day to pick

<u>Pg. 36</u>

up a guy named "Fly," (whom was never proven to ever be a real person) they were using a car rented by Tawi. Evans further testified that after picking up "Fly," they all drove back to Tawi's Apartment in Wilmington, Delaware. At that point Evans and "Fly" went to buy some marijuana, while Tawi and the defendant left to go someplace in Tawi's car. A little while later the defendant and Tawi returned to the apartment where the defendant, "Got halfway out of the car," to tell Evans and "Fly" to, "Let's go we're going back to Jersey." Evans then testified that on the drive back to New Jersey the defendant admitted to killing Wrencer. He also stated that he and Tawi were the only ones to return to Delaware that night, leaving the defendant in New Jersey. (see; <u>A-6 date 2/2/04 T.S. pgs. 44-51</u>)

Tawi testified that there was only <u>one</u> trip to New Jersey that day and it took place <u>after</u> the murder. Tawi also acknowledged that a guy named Phil "Free" Kizee was with him, Evans and the defendant on the day of the murder not "Fly." In fact Tawi testified that he doesn't even know a "Fly." (see; <u>A-10 date 2/4/04 T.S. pgs. 73, 74</u>)

It is important to note that Evans knows Phil "Free" Kizee also. Detective Barry Mullins testified that he showed Evans a photo of Kizee and that Evans told him that he knew Kizee but that Kizee and "Fly" were two different people. (see; <u>A-23 date 2/5/04 T.S. pg. 27 for detective Mullins</u>)

Tawi further testified that he parked down the street from the victims home and waited while the defendant went into the victims home.

<u>Pg. 37</u>

A short while later the defendant came out and told Tass that he shot the victim. They then drove back to Tass's Apartment where they went inside for about five minutes. They then drove to New Jersey where they dropped off Kizee and then returned to Delaware with the defendant. Tass also testified that he bought the marijuana not Evans. (see, A-4 date 2/4/04 T.S. pgs. 33-40, And A-7 date 2/4/04 T.S. pgs. 41-44, Tass testimony.)

Also on the date January 9, 2004 a motion in limine hearing was held to exclude reference to a gun the state alleged was the murder weapon. Both State and defense ballistic experts concluded that they could not conclusively match the bullets found at the crime scene to the gun in question. (see; A-1 dated 1/9/04 T.S. pg. 23 & 61 for state And defense ballistic experts conclusion.)

Accordingly on the date of January 20, 2004 the court granted the defendants motion. (see; A-00 dated 1/20/04 court's ruling on motion in limine.) But on the date of February 3, 2004 during trial, a balancing analysis to determine relevancy of evidence was held to establish if the gun in question would become admissable evidence, at which time a detective Spillan testified that upon discovering the gun from State witness Earl Evans Apt. Evans stated that the gun found was the defendants. (see; A-11 dated 2/3/04 T.S. pg. 35.)

Based solely on that testimony, believing that Evans would link the defendant to the gun, the trial judge allowed the gun to be offered as evidence. Only later to have the basis for which the gun was admitted destroyed when Evans later testified that he never told the police who the gun belonged to when it was found. (see, A-11 dated 2/3/04 T.S. pgs. 47-57 for court's balancing analysis ruling; And see; A-12 dated 2/3/04 T.S. pgs. 75 & 76 for Evans.)

On the date of 2/11/04 the jury sent a note indicating that they were deadlocked 6-6 and had been that way for the majority of two days. Later that day the jury requested to review testimony via transcript. (Request was denied) And on 2/12/04 the jury came back with a unanimous verdict. (Guilty)

## Petitioner's Exhaustion of State Remedies

The claim for review was presented to the Supreme Court for direct appeal relief (see; A-33 counsels' brief) Followed by an appeal to the Superior Court for Post Conviction relief (see; A-31 Pet. Brief) And an appeal thereof to the Supreme Court (see; A-32 Petitioner's Brief) Trial counsel argued on direct appeal that, the jury's verdict was not supported by sufficient evidence, And the Petitioner continued to present this claim with additional evidence during his Post Conviction relief proceedings, charging that his 14th amendment right was violated.

## Court's Decisions

On direct appeal the Supreme Court ruled in part that, "Because it does not appear that Harvey properly preserved this issue by moving for a judgment of acquittal in the trial court, our standard of review is plain error. Even under a de novo standard, however, we find that there is sufficient evidence for a rational finder of fact, viewing the evidence in light most favorable to the state, to find Harvey guilty beyond a reasonable doubt." (see; A-34)

On the Petitioner's Post Conviction Relief to the Superior Court they ruled that, This claim was formerly adjudicated And did not meet the narrow "interest of justice" exception and is therefore barred and do not warrant further consideration. The Supreme Court echoed this ruling. (see; A-34 for direct appeal and both state court Rulings )

## Entitlement to Relief under 28 U.S.C § 2254; Unreasonable Application of Clearly Established Federal law

The petitioner's petition for a writ of habeas corpus was filed on May 14, 2008. Therefore, the provisions of the antiterrorism And Effective Death Penalty Act ("AEDPA") apply, And the standard of review is controlled by 28 U.S.C § 2254 (d) which states; (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court Proceedings unless the adjudication of the claim; (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The petitioner asserts that a violation of both § 2254 (d) (1) And (d) (2) occurred.

Aside from the fact that Taw's identification of the fourth person was Phil Kizee., while Evans identification was of someone.

who wasn't even proven to be a person, named "fly". The state
never called "fly" or Kizee to testify as witnesses to corroborate
the testimony given. In fact the state had the opportunity to
question Kizee, And even had him listed as a witness. But
upon being questioned by the police learned that he was unable
to corroborate Tann's accusations and decided not to call on
him to testify. Numerous attempts by the defendant to get
Kizee's police statement went ignored by defense counsel And
unfulfilled by the court. (see; A-24 the written letter
concerning request for Kizee's police statement)
The defendant would like to reiterate that every aspect of
the events that supposedly took place before and after the murder
was contradicted by the states own chief witnesses; From the
total trips to new Jersey that day, to who the alleged fourth
person with Tann, Evans and the defendant was, to if they
actually entered Tann's Apartment upon returning from the crime;
to whether the defendant came back to Delaware the night in
question, Even as to who purchased the marijuana that day.
In addition to the fact that their stories were so substantially
inconsistent, the Record also shows that both Tann and Evans
had time and opportunity to concoct their story. (see; A-10
date 2/4/04 T.S. pgs. 69-71) They even found themselves in each
others presence during trial, at which time Evans asked "Tann
if he was; going to do what they want us to do?" (see; A-7
dated 2/4/04 T.S. pgs. 53-54) They were also looking at
significant jail time on other robbery charges. (see; A-3
2/4/04 T.S. pgs. 27-28 Tann And A-6 2/2/04 T.S pgs. 83-84 Evans

Also, and maybe most important of all, on the date of 2/3/04 detective Spillan testified during a balancing analysis to determine relevancy of evidence, that upon retrieving the gun in question (for a seperate incident) State Witness Earl Evans stated that the gun found was the defendant's. Based soley on this balancing testimony the trial judge ruled that the gun would be allowed to be introduced. (see A-11 date 2/3/04 T.S pgs. 16-63 for testimony and judge's ruling)

That testimony was later proven to be misleading/perjured when Evans testified that he never told the police who the gun belonged to upon its discovery. (see A-12 date 2/3/04 T.S. pgs. 75-76)

The defendant contends that the admission of the unlinkable gun alone is enough to prove that the jury's verdict was not supported by sufficient evidence, considering the fact that neither state or defense ballistics experts could could link the gun in question to the murder. (see; A-1 dated 1/9/04 T.S. pg. 23 for state And T.S. pg. 61 for defense ballistic conclusion) Also the misleading/ perjured balancing analysis testimony and the jury sending a note stating that they were deadlocked 6-6 for two days before coming back with a verdict the very next day despite not being able to review the transcripts of the testimony given, as requested. (see; A-22 date 2/11/04 T.S. pgs. 2-9 for deadlock note; See; A-28 date 2/11/04 for request to review portions of testimony via transcript and A-22 date 2/12/04 for verdict )

Inferences which do not have basis in facts established by the evidence cannot be drawn or relied upon to sustain verdict.

Pg. 42

The defendant asserts that the cumulative effect of the lack of overall evidence and inconsistent testimony throughout the trial clearly establishes that no rational trier of fact could have determined to have found the essential elements of the crime beyond a reasonable doubt.

The petitioner hereby requests and prays that the court set aside his conviction and grant the relief in which the petitioner is entitled.