# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON HAINEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 08-272-SLR |
| | ) |
| PERRY PHELPS, | ) |
| Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE | ) |
| OF DELAWARE | ) |
| | ) |
| Respondents. | ) |

_____

Jason Hainey. Pro se petitioner.

Gregory Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

_____

## **MEMORANDUM OPINION**

July  II  , 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is Jason Hainey's ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) Petitioner is a Delaware inmate in custody at the James T. Vaughn Correctional Center, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 2001, petitioner shot Michael Mercer six times with a .38 caliber Cobra handgun. Prior to the murder, petitioner was with Moina B. Tann, Earl Evans, and another man identified either as "Fly" or "Phil." While he was with these men, petitioner arranged a meeting with Mercer in order to purchase some CDs. Tann drove petitioner to Mercer's house. Before leaving for the meeting, petitioner armed himself with a handgun belonging to Tann and, while driving, told Tann of his intention to rob Mercer. When they arrived at Mercer's house, Tann waited in the car while petitioner went inside. Tann subsequently heard two noises, although he did not think they sounded like gunshots. Upon returning to the car, petitioner told Tann that he shot Mercer when Mercer reached for the gun. An autopsy showed that Mercer was shot six times, and three of those shots were fired into his back.

After the shooting, petitioner and Tann drove back to Tann's house and ultimately ended up in New Jersey. At some point that evening or the next day, petitioner returned Tann's gun. The following day, petitioner expressed relief to Tann,

---

[1]The factual history is summarized from the Delaware Supreme Court's opinion in *Hainey v. State*, 878 A.2d 430, 432 (Del. 2005). The procedural history is summarized from the State's answer (D.I. 19) and the state court record (D.I. 18).

Evans, and Wayne Anthony Hall, that the newspaper article describing Mercer's death did not contain much information.

Approximately one week later, the police searched Tann's house because they had learned that Mercer received a phone call from Tann's house on the afternoon of the murder. The murder weapon, however, was gone. During an unrelated search of Evans' house on September 12, 2001, the police discovered a gun in a room which petitioner had been occupying and also which contained some of petitioner's clothing. The police did not immediately connect the gun to the Mercer murder. Rather, when the police arrested Evans for an unrelated robbery in March 2003, Evans disclosed to police that the gun they had recovered during the search of his house in 2001 was the Mercer murder weapon.

On June 23, 2003, Wilmington police officers arrested petitioner. He was subsequently indicted on the following charges: first degree intentional murder; first degree felony murder; attempted robbery in the first degree; and two counts of possession of a firearm during the commission of a felony. In February 2004, a Superior Court jury found petitioner guilty on all counts. The penalty phase was held from February 17, 2004 to February 20, 2004, and the jury returned a 7-5 life recommendation. On May 14, 2004, the Superior Court sentenced petitioner to life imprisonment on both convictions of first degree murder, three years imprisonment on each of the two weapons convictions, and three years imprisonment for the first degree attempted robbery conviction.

Petitioner filed a notice of appeal. On July 5, 2005, the Delaware Supreme Court affirmed petitioner's convictions and sentences. In June 2006, petitioner filed a

motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *State v. Hainey*, 2007 WL 2823329 (Del. Super. Ct. Sept. 24, 2007); *Hainey v. State*, 945 A.2d 1167 (Table), 2008 WL 836599 (Del. Mar. 31, 2008).

Petitioner timely filed the application for federal habeas corpus relief presently pending in this court. (D.I. 2) The State filed its answer, contending that claims in the application must be denied for failing to satisfy § 2254(d). (D.I. 19)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA also imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

One prerequisite to federal habeas review is that a petitioner must exhaust all

remedies available in the state courts. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider them on the merits. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). However, a federal district court must excuse a petitioner's failure to exhaust state remedies if state procedural rules bar the petitioner from returning to state courts to obtain further relief for his claims; in other words, the claims are deemed exhausted because there is an "absence of an available State corrective process." 28 U.S.C. 2254(b); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000). Although deemed exhausted, such claims are nonetheless procedurally defaulted, and a federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. Lines, 208 F.3d at 160; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with

4

the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Id.* at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

### 1. Deferential standard of § 2254(d)

When a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Clearly established federal law for § 2254(d)(1) purposes refers to Supreme Court holdings, rather than dicta, that were clearly established at the time of the pertinent state court decision. See Greene v. Palakovich, 606 F.3d 85 (3d Cir. 2010). In turn, a claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

## 2. De novo standard of review

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim de novo. See Breakiron v. Horn, __ F.3d __, 2011 WL 1458795, at *3 (3d Cir. Apr. 18, 2011) (citing Porter v. McCollum, __ U.S. __, 130 S.Ct. 447 (Jan. 19, 2011)). De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams, 529 U.S. at 400

6

(2000)(O'Connor, J., concurring).

### 3. Section 2254(e) and the presumption of correctness

Finally, whether reviewing a habeas application de novo or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001). This presumption of correctness applies to both implicit and explicit findings of fact, and can only be rebutted by petitioner upon a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,*537 U.S. 322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Petitioner asserts four grounds for relief:[2] (1) there was insufficient evidence to support the jury's verdict, thereby depriving him of due process; (2) the Superior Court deprived him of due process by erroneously admitting a gun into evidence; (3) defense counsel provided ineffective assistance by failing to argue or object that the "prosecution used misleading/ perjured testimony and . . . misrepresented evidence to convict"; by failing to subpoena a key witness; and by failing to file a motion for judgment of acquittal; and (4) appellate counsel provided ineffective assistance by

---

[2]For ease of analysis, the court has renumbered petitioner's grounds for relief and has combined petitioner's three ineffective assistance of counsel claims into one claim (claim three) with three subparts.

7

failing to appeal the aforementioned claims.[3]

## A. Claim One: Insufficient Evidence to Support the Jury's Verdict

In his first claim, petitioner contends that he was deprived of due process because the jury's verdict was not supported by sufficient evidence. The Delaware Supreme Court denied this argument as meritless during petitioner's direct appeal after reviewing the argument both de novo and for plain error. Therefore, petitioner will only be entitled to habeas relief if the court concludes that the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established federal law for insufficient evidence claims was articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. A court must apply *Jackson*'s standard with explicit reference to the substantive elements of the criminal offense as defined by state law. *Id.* at 324 n.16; *see also Jordan v. Snyder*, 2000 WL 52152, at *4 (D. Del. Jan. 5, 2000).

Under the applicable Delaware law at the time of petitioner's trial, petitioner could be found guilty of attempted first degree robbery if the State proved the following elements beyond a reasonable doubt: (1) petitioner's conduct was a "substantial step"

---

[3]The same two attorneys represented petitioner at trial and on direct appeal. The different references to "trial counsel" and "appellate counsel" are for ease of analysis and to help differentiating between petitioner's allegations.

8

in a course of conduct planned to result in the theft of Mercer's money on August 21, 2001; (2) he used or threatened the immediate use of force upon Mercer; (3) he had the specific intent to compel Mercer to hand over money in response to threat of force; and (4) he displayed what appeared to be a deadly weapon during the attempted commission of the robbery. 11 DEL. C. ANN. § 832(a)(2); 11 DEL. C. ANN. § 531(2) (definition of "attempt"). Petitioner could be found guilty of first degree intentional murder under 11 DEL. C. ANN. § 636(a)(1) if the following elements were established beyond a reasonable doubt: (1) petitioner brought about Mercer's death by his own voluntary act; and (2) he acted intentionally, meaning that it was his conscious object or purpose to cause Mercer's death. In turn, petitioner could be found guilty of first degree felony murder under 11 DEL. C. ANN. § 636(a)(2) if the State proved beyond a reasonable doubt that: (1) petitioner caused Mercer's death; (2) he acted intentionally in causing Mercer's death; and (3) Mercer's death occurred in the course of and in furtherance of the commission or attempted commission of another felony (here, first degree attempted robbery). In order for petitioner to be convicted of one of the charges of possession of a firearm during the commission of a felony, the State had to prove beyond a reasonable doubt that: (1) petitioner committed a felony (here, first degree murder); (2) during the course of that felony, petitioner possessed a firearm; and (3) petitioner acted knowingly. 11 DEL. C. ANN. § 1447A(a). And finally, in order for petitioner to be convicted on the other possession charge, the State had to prove all the aforementioned possession elements beyond a reasonable doubt, but this time, the felony committed by petitioner was first degree attempted robbery. (D.I. 18, App. to State's Ans. Br., No.252,2004, at B-19 to B-22)

9

Petitioner did not testify during his trial, nor did he present any other witnesses.

Thus, the only evidence heard by the jury was what was presented by the State, and

Tann and Evans were the principal witnesses for the prosecution.

> Tann testified that: (i) petitioner took Tann's gun; (ii) they drove to Mercer's house; (iii) petitioner told him that petitioner was planning to rob Mercer; (iv) while waiting outside, Tann heard two noises from inside the house; and (v) when petitioner got back in the car, he said that he had shot Mercer. Evans did not drive to the house with Tann and petitioner, but he was at Tann's house when the two men returned. Evans testified that: (i) during the car ride to New Jersey after the shooting, petitioner told him that he pulled a gun on Mercer, but that Mercer grabbed for the gun and it went off; (ii) petitioner also told Evans that he put five more bullets into Mercer because he did not want to leave any witnesses; and (iii) they were driving to New Jersey in order to give petitioner an alibi.

> There was additional, corroborating testimony from Anthony Wayne Hall, Evans' roommate. Hall testified that, the day after the murder, Evans showed him a newspaper article about the shooting and told him that petitioner had done it. In addition, Hall testified that petitioner had been staying at his house when the police discovered the gun among petitioner's possessions on the living room floor.

*Hainey*, 878 A.2d at 433. In addition, Tann recalled that he saw the handgun used by

petitioner in commission of the attempted robbery and the fatal shooting of Mercer later

that evening at his residence. (D.I. 18, Appellant's App. to Op. Br. in No.252,2004, at

A-66) Likewise, both Evans and Hall recalled seeing the handgun later when the police

discovered it in the petitioner's bag at Evans' apartment. (D.I. 18, Appellant's App. to

Op. Br. in No.252,2004, at A-51; App. to State's Answering Br. in No.252,2004, at B-

9,10)

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the

Delaware Supreme Court did not specifically apply *Jackson* and its progeny in holding

that there was sufficient evidence to support petitioner's convictions. Nevertheless, the

court concludes that the Delaware Supreme Court's decision was not contrary to *Jackson*, because the Delaware case cited by the Delaware Supreme Court refers to the applicable precedent. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

This does not complete the court's inquiry under § 2254(d)(1) because the court must also determine if the Delaware Supreme Court's application of *Jackson* was reasonable. Petitioner contends there was insufficient evidence to support his convictions on all charges because: (1) the evidence was circumstantial; (2) Tann and Evans provided inconsistent testimony; (3) the ballistics test failed to link the gun to petitioner; and (4) the jury found it difficult to reach a verdict. Petitioner's argument is unavailing. When reviewing a claim alleging insufficient evidence to support a conviction, a "federal habeas court faced with a record of historical facts that supports conflicting interests must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution;" credibility determinations made by the jury are not reviewable in federal habeas proceedings. *Jackson*, 443 U.S. at 326. In turn, a jury's verdict may be based entirely on circumstantial evidence, so long as the *Jackson* standard is satisfied and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954).

11

The defense theory presented at trial was that Tann and Evans were the perpetrators of the offenses and that they fabricated the story about petitioner in order to protect themselves. During their cross-examination of all witnesses and in their closing argument, trial counsel highlighted the inconsistencies between Tann and Evans' testimony and the reasons they had for blaming petitioner for Mercer's murder; the circumstantial nature of the evidence presented by the State; and the absence of a ballistics test linking petitioner to the murder weapon. Nevertheless, the jury's verdict indicates that it found the circumstantial evidence presented by the State more credible than the defense theory. Although petitioner contends that the jury's lengthy deliberations and temporary deadlock supports his challenge to the sufficiency of the evidence, there is no Supreme Court precedent indicating that the length of a jury's deliberations is a factor affecting a sufficiency challenge. *See, e.g., Guar. Serv. Corp. v. Am. Ins. Co.*, 893 F.2d 725, 729 (5th Cir. 1990). Rather, as explained by the Fifth Circuit Court of Appeals, "[w]e cannot hold an hourglass over a jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial." *Marx v. Hartford Accident & Indem. Co.*, 321 F.2d 70, 71 (5th Cir. 1963)(discussing the relevance of a brief jury deliberation); *United States v. Yong Ping Liu*, 288 F. App'x 193, 198 (5th Cir. 2008)(the jury's temporary deadlock and length of deliberations is immaterial to [petitioner's] sufficiency-of-the-evidence challenge.")

Thus, deferring, as it must, to the jury's credibility determination, and after viewing all of the aforementioned evidence presented at petitioner's trial in a light most favorable to the State, the court concludes that the Delaware Supreme Court did not unreasonably apply *Jackson* in holding there was sufficient evidence to support all of

petitioner's convictions. The court further concludes that the Delaware Supreme Court's decision did not involve an unreasonable determination of the facts in light of the evidence presented. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

## B. Claim Two: State Court's Evidentiary Error Violated Petitioner's Due Process Rights

In claim two, petitioner contends that the introduction of the gun into evidence violated his due process right to a fair trial because the inconclusive ballistics test did not directly link the gun to him, and because the trial court conducted an incomplete *Getz* balancing analysis to determine the gun's relevancy. The State asserts that petitioner has exhausted state remedies for this claim because he presented it to the Delaware Superior Court in his Rule 61 motion and to the Delaware Supreme Court on post-conviction appeal. The State further asserts that the Delaware State Courts did not address the claim, requiring the court to apply the pre-AEDPA standard and review the claim de novo. *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004). Finally, the State argues that even under de novo review, the claim should be denied as meritless.

As an initial matter, the court finds that claim two does not assert a proper basis for federal habeas relief. It is well-settled that the "[a]dmissibility of evidence is a state law issue,"[4] and "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Although claim two briefly asserts that the trial court's alleged evidentiary error

---

[4]*Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

violated petitioner's right to a fair trial under the Due Process Clause of the Fourteenth Amendment, petitioner's main contention is that the trial judge would have barred the admission of the gun into evidence if he had considered "the testimony of state witness Earl Evans in[] the balancing analysis [of D.R.E. 403] to determine the relevancy of evidence." (D.I. 8 at 15) Clearly, the thrust of this claim is that the trial court erroneously applied Delaware law in admitting the gun. Thus, the court denies claim two for failing to present an issue cognizable on federal habeas review.

Nevertheless, even if the court were to treat claim two as cognizable on habeas review, the claim fails to warrant habeas relief. To begin, the court rejects the State's contention that claim two should be reviewed de novo. The State apparently views the isolated references in petitioner's Rule 61 motion and post-conviction appellate brief that petitioner's right to a "fair trial" was violated by the admission of the gun as "fairly presenting" a federal constitutional issue to the Delaware state courts.[5] The court

---

[5]Although the State does not address whether petitioner exhausted this claim by presenting it on direct appeal, a review of the record demonstrates that petitioner did not "fairly present" the instant claim to the Delaware Supreme Court on direct appeal. For instance, the three issues petitioner raised on appeal were: (1) there was insufficient evidence to support the jury's verdict; (2) the trial court committed plain error in failing to give a limiting instruction with respect to evidence that petitioner possessed a revolver at the time of a police search in an unrelated incident; and (3) the trial court abused its discretion in excluding evidence of a witness's prior conviction. *Hainey*, 878 A.2d at 431. Petitioner's second appellate claim ("limiting instruction" claim) is the one most closely related to claim two in this proceeding. In presenting his "limiting instruction" claim on direct appeal, petitioner contended that, even with his "concession that the gun was admissible under Rule 404(b), there remained a need for a *Getz* instruction." (D.I. 18, Appellant's Op. Br. in *Hainey v. State*, No. 252, 2004, at 16) Petitioner argued, "[i]n this very close case, the subject never came up, and the fifth requirement (jury instruction) of the *Getz* analysis was never met, amounting to plain error." *Id.* at 17.

The due process claim in this proceeding is not based upon the trial court's failure to provide a limiting instruction but, rather, on petitioner's belief that the gun was

14

disagrees. According to the United States Supreme Court, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995)(holding that a claim of "miscarriage of justice" does not qualify as asserting federal due process claim). The Third Circuit Court of Appeals has clarified this rule, specifically holding that a petitioner does not invoke the federal due process guarantee by "argu[ing] that the admission of evidence denied him a "fair trial." *Keller v. Larkins*, 251 F.3d 413-15 (3d Cir. 2001). As explained by the Third Circuit , "[s]ince the Supreme Court found [a petitioner's assertion that the introduction of evidence caused a 'miscarriage of justice'] insufficient to give fair notice of a federal due process claim, we are hesitant to attach greater significance to the passing reference to the concept of a "fair trial" on which [the petitioner's] argument rests. *Id.*

Here, although petitioner included one or two brief sentences in his Rule 61 motion[6] and his post-conviction appellate brief[7] that the erroneous admission of the gun into evidence violated his right to a fair trial, the remainder of those arguments explained why he believed the admission constituted an error under Delaware evidentiary rules. Specifically, petitioner asserted that the trial court misapplied

---

erroneously admitted into evidence in the first place. Thus, because the argument petitioner presented on direct appeal regarding the gun is not the same due process argument presented in this proceeding, the court concludes that petitioner has not satisfied the "fair presentation" component of the exhaustion doctrine.

[6](D.I. 9, A-31, Ground 1)

[7](D.I. 18, Appellant's Op. Br. in No.538,3007 at i, 8)

15

Delaware Rules of Evidence 901(a) and 403 and the analysis articulated in *Getz v. State*, 538 A.2d 726 (Del. 1988) in admitting the gun, because there was no nexus connecting the gun to Mercer's death, and there was no link between petitioner and the gun. (D.I. 18, Appellant's Op. Br. in *Hainey v. State*, No. 538,2007, at 15) Further, even though the Delaware State Courts' interpretation of the claim is not conclusive, the court finds significance in the fact that both the Delaware Superior Court and the Delaware Supreme Court viewed the claim as asserting an state evidentiary error and analyzed it as such, rather than as a federal due process claim. Accordingly, the court concludes that petitioner has not exhausted state remedies for claim two, because he presented this claim to the Delaware State Courts in terms of a state evidentiary error and not as a federal due process claim.

At this juncture, state procedural rules would bar petitioner from obtaining further review of claim two in the Delaware state courts.[8] Consequently, the court must treat the claim as exhausted but procedurally defaulted, precluding the court from reviewing the claim on its merits absent a showing of cause and prejudice, or that a miscarriage of justice will result in the absence of habeas review.

Petitioner appears to assert that his default of claim two should be excused because appellate counsel failed to raise the admission of the gun as a due process

_____

[8]Petitioner cannot exhaust state remedies by including claim two in a new Rule 61 motion and appealing any decision to the Delaware Supreme Court. Delaware Superior Court Criminal Rule 61(i)(1) would bar review of the claim as time-barred, and Rule 61(i)(2) would bar the claim as repetitive. *See, e.g., Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding).

16

claim on direct appeal.[9]  It is well-settled that an attorney's ineffective assistance that rises to the level of a Sixth Amendment violation constitutes cause for a default. *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009)(citing cases).  Because petitioner raised this particular allegation of ineffective assistance on post-conviction appeal and the Delaware Supreme Court denied the claim for lack of prejudice,[10] appellate counsel's failure to raise claim two on direct appeal can only constitute cause for petitioner's procedural default of claim two if the Delaware Supreme Court's denial of the ineffective assistance of counsel claim was either contrary to, or involved an unreasonable application of, clearly established Federal law.

As explained later in this opinion, the Delaware Supreme Court's denial of this particular ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. *See infra* at 30-32. Consequently, appellate counsel's performance cannot constitute cause for petitioner's default of claim two.

In the absence of cause, the court need not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default does not apply here, because petitioner has not provided a colorable claim of actual innocence. Accordingly, if claim two is cognizable, the court denies it as procedurally barred.[11]

---

[9]The record reveals that trial counsel objected to the admission of the gun into evidence during the trial.  However, appellate counsel did not raise on direct appeal a federal due process violation based on the trial court's evidentiary ruling.

[10]*Hainey*, 2008 WL 836599, at *1.

[11]And, alternatively, even if reviewed de novo, the court would deny the claim as meritless because petitioner has not established a violation of his due process rights.

## C. Claim Three: Trial Counsel Provided Ineffective Assistance

In claim three, petitioner alleges that trial counsel provided ineffective assistance

by failing to object or argue that the "prosecution used misleading/perjured testimony

and . . . misrepresented evidence to convict;" by failing to interview or subpoena a key

witness; and by failing to file a motion for judgment of acquittal. Petitioner presented

these arguments to the Superior Court in his Rule 61 motion, and then again to the

On habeas review, the court must accord great deference to the Delaware Supreme Court's evidentiary ruling that this evidence was admissible under Delaware law, and claims based on state court evidentiary errors cannot warrant habeas relief unless the petitioner demonstrates that the error was so pervasive that he was denied the fundamental right to a fair trial. *See Estelle*, 502 U.S. at 67-68. In turn, the credibility of witnesses is a question left to the province of the jury. *United States v. Scheffer*, 523 U.S. 303, 313 (1998).

Although the State did not introduce a ballistics test directly linking the gun to petitioner, the testimony of Evans and Tann provided the jury with a reasonable basis to conclude the gun was the one used in the commission of crimes charged to petitioner. In turn, to the extent the court can even consider petitioner's challenge to the relevancy test performed by the trial court under Delaware state law, the record belies petitioner's contention that the trial court's allegedly incomplete balancing analysis regarding the gun's relevancy rendered his trial fundamentally unfair. The trial court acknowledged that the circumstances surrounding the discovery of the gun and the fact that it might be petitioner's were not strong, but concluded that they were sufficient to allow the gun to be admitted. (D.I. 18, App. to Appellant's Op. Br., No.538,2007 at A-11, sheet 14, p.53) In permitting the admission of the gun, the trial court limited the scope of Detective Spillan's testimony about the manner in which he found the gun to ensure that the evidence of uncharged misconduct would not be introduced against petitioner. *Id.* For instance, after ruling that the tenuousness of the link between petitioner and the gun "would go to the weight of the evidence that the jury should give to it and not its admissibility," the trial court held that the jury would only hear that petitioner periodically visited the apartment where the gun was found. (D.I. 18, App. to Appellant's Op. Br., No. 538,2007 at A-11, sheet 14, pp. 53, 55) And finally, to the extent petitioner contends that the balancing analysis was flawed because the trial court only relied on Detective Spillan's testimony and failed to consider Evans' testimony that he never told the police that the gun belonged to petitioner, the court's discussion of claim three, subpart one demonstrates that Evans' testimony was not, in fact, inconsistent with Detective Spillan's testimony. *See infra* at 21-25. Accordingly, the court concludes that petitioner has failed to demonstrate that the admission of the gun "so infuse[] the trial with unfairness as to deny due process of law." *Estelle*, 502 U.S. at 75.

18

Delaware Supreme Court on post-conviction appeal. The Superior Court did not

address allegation one, but denied allegations two and three for failing to satisfy the

Strickland standard.[12] On post-conviction appeal, the Delaware Supreme Court held

that all of the allegations included in petitioner's ineffective assistance of counsel claim

were unavailing because petitioner "failed to demonstrate that [] his trial counsel []

committed errors resulting in prejudice to him." Hainey, 2008 WL 836599, at *1. Given

the Delaware Supreme Court's adjudication of the three allegations contained in the

instant claim, the court can only grant habeas relief if the Delaware Supreme Court's

decision was either contrary to, or an unreasonable application of, clearly established

federal law, or the decision was an unreasonable determination of the facts based on

the evidence adduced in the trial.

The clearly established federal law governing ineffective assistance of counsel

claims is the two-pronged standard announced in Strickland v. Washington, 466 U.S.

668, 690 (1984). Under the first Strickland prong, the petitioner must demonstrate that

"counsel's representation fell below an objective standard of reasonableness," with

reasonableness being judged under professional norms prevailing at the time counsel

rendered assistance. Strickland, 466 U.S. at 688. The second Strickland prong

requires the petitioner to demonstrate "there is a reasonable probability that, but for

counsel's error the result would have been different." Id. at 687-96. A reasonable

probability is a "probability sufficient to undermine confidence in the outcome." Id. at

---

[12]It appears that the Superior's Court failure to review petitioner's first argument
may have been due to an oversight because petitioner presented the first argument in
his amendment to the Rule 61 motion, not in his original Rule 61 motion.

688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

The Delaware Supreme Court denied the instant ineffective assistance of counsel allegations after correctly identifying the *Strickland* standard. Therefore, the court concludes that the Delaware Supreme Court's denial of claim three was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court unreasonably applied *Strickland* in rejecting the arguments asserted in claim three. In performing this inquiry, the court notes that it owes double deference to the Delaware state courts' decisions regarding ineffective assistance of counsel claims. *See Richter,* 131 S.Ct. 770. More specifically,

> [u]nder § 2254(d), a habeas court must determine what arguments or theories supported or, [as with summary decisions], could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."

*Id.* at 786. Then, when the claim under review alleges ineffective assistance of

counsel, the federal court

> must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Id.* at 788 (emphasis added).

As emphasized in *Richter*, the general nature of the *Strickland* standard provides state courts with substantial leeway in applying the *Strickland* standard to individual cases, thereby resulting in a substantial range of reasonable applications under the "doubly deferential" standard of *Strickland* and § 2254(d). *Id.* at 786, 788. And finally, when assessing prejudice under *Strickland*, the court must determine if petitioner has shown "a substantial, not just conceivable" likelihood that the outcome of the case would have been different if counsel had performed otherwise. *Id.* at 792. In other words, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

With these principles in mind, the court will undertake its "doubly deferential" review of petitioner's three specific allegations regarding trial counsel's ineffectiveness.

### 1. Counsel's failure to object to prosecutorial misconduct

Petitioner contends that trial counsel rendered ineffective assistance by failing to object or argue that the "prosecution used misleading/perjured testimony and . . . misrepresented evidence to convict." The testimony about which petitioner complains was provided by the State's witness, Detective Spillan, who testified on two different

occasions during the trial: once outside the presence of the jury so that the trial court could conduct a balancing analysis to determine the admissibility of the gun as evidence, and once in the presence of the jury. On both occasions, Detective Spillan described how he uncovered the gun in Earl Evans' apartment three weeks after Mercer's murder while he was performing a search of that apartment for an unrelated criminal investigation. Detective Spillan testified that he found the gun wrapped in a plastic bag and placed within a pile of belongings located in the living room of Evans' apartment, and that he was thereafter informed by Evans that petitioner owned all of the belongings in said pile.

Pointing to what he perceives to be an inconsistency between Detective Spillan's two testimonies regarding how the Detective learned the identity of the person who possessed the gun, petitioner contends that Detective Spillan perjured himself during his first testimony. For instance, according to petitioner, when Detective Spillan testified during the balancing analysis, he stated that Evans **told** him the gun found in the pile of clothes in the living room belonged to petitioner. (D.I. 8 at 16) Yet, during his testimony in the presence of the jury ("second testimony"), Detective Spillan explained that Evans did not specifically tell him that the **gun** belonged to petitioner, but rather, Evans indicated that all of the **belongings** located in the living room belonged to petitioner:

> Trial Counsel: Okay. But did he say that gun belonged to [petitioner]? Or did he say that property belongs to petitioner?
>
> Spillan: He said all that property there, where we recovered the weapon from, belonged to petitioner.

\* \* \*

22

> Trial Counsel: So he tells you that property over there, that belongs to petitioner, right?
>
> Spillan: Correct.
>
> Trial Counsel: But he didn't tell you the gun belonged to petitioner, did he?
>
> Spillan: I don't even know if I would have specifically asked that question of him.

(D.I. 18, Appellant's App. to Op. Br. in *Hainey v. State*, No. 252, 2004, at A-53 to A-54)

When Evans testified, he stated that he never told the police the identity of the person to whom the gun belonged. (D.I. 9 at A-12, sheet 19, p. 76)

Petitioner asserts that defense counsel was ineffective for not objecting to the introduction of the gun as evidence after Detective Spillan provided his second testimony, and especially after Evans testified that he never told the police that the gun belonged to petitioner. Petitioner argues that the Detective's second testimony and Evans' testimony demonstrated the falseness of Detective Spillan's first testimony and destroyed the foundation for the admission of the gun. (D.I. 8, at.2)

The court is not persuaded by petitioner's argument. To begin, the following excerpt from Detective Spillan's first testimony demonstrates that the Detective never stated that Evans directly told him that the gun belonged to petitioner; rather, as he did in his second testimony, Detective Spillan asserted that Evans indicated that all of the belongings in the living room belonged to petitioner.

> Prosecutor: And when you removed the gun from that personal bag, did you learn to whom, if anyone, it belonged to, the bag?
>
> Spillan: That was indicated that the property and everything belonged to [petitioner].

23

Prosecutor: Who told you that?

Spillan: That was Mr. Evans.

\*    \*    \*

Prosecutor: Before or after you went into the bag, did you learn – when did you learn who the bag belonged to, before or after you removed the gun from the bag?

Spillan: When we indicated to the owners of the apartment we found the gun.

Prosecutor: Okay. Now, were they actually able to see you retrieve the gun?

Spillan: Yes.

Prosecutor: Did you actually show them the gun?

Spillan: I didn't get up to them and hand it to them or anything, but they were across – the living room, [] the property that they indicated was [petitioner's] was across the room, unobstructed view, in the corner with all the belongings. When we pulled the gun up out of the bag, that's when they had indicated that property belonged to [petitioner].

\*    \*    \*

Court: Detective, I'm assuming – we'll get to this in a moment – but I'm assuming that other than what these two individuals told you, that this was [petitioner's] property, there was nothing that you recovered or nothing that you found that would independently confirm that this was his property, that it had to be, based upon what they told you?

Spillan: Correct.

(D.I. 18, Appellant's App. to Op. Br. in *Hainey v. State*, No.538,2007, at A-11, sheets 4

and 5)

Laying out the testimony as above demonstrates that Detective Spillan's first

testimony was consistent with his second testimony which, in turn, was consistent with

Evans' testimony. Given the absence of any discrepancies in the aforementioned

24

testimony, trial counsel simply had no basis for arguing that Detective Spillan's second testimony destroyed the "foundation" for the gun's admission into evidence. Consequently, counsel did not perform ineffectively by failing to raise a meritless objection. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Moreover, even if Detective Spillan's two testimonies could be viewed as inconsistent, "[d]iscrepancy is not enough to prove perjury. There are many reasons why testimony may be inconsistent; perjury is only one possible reason." *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004). Here, aside from asserting his belief that Detective Spillan testified inconsistently, petitioner has not provided the court with any reason to find that Spillan perjured himself. Thus, the court concludes that trial counsel's "failure" to object to the State's presentation of Detective Spillan's testimony was objectively reasonable.

Additionally, petitioner has not demonstrated that he suffered prejudice as a result of trial counsel's alleged failure to object to the testimony offered by Detective Spillan. It is well-settled that "[c]ross-examination . . . is an effective tool for revealing inconsistencies." *Rock v. Arkansas*, 483 U.S. 44, 61 (1987). In turn, "[d]etermining the weight and credibility of witness testimony [is] the part of every case that belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *United States v. Scheffer*, 523 U.S. 303, 313 (1998).

The record in this case clearly shows that trial counsel zealously cross-examined Detective Spillan and clarified the fact that Evans did not specifically tell the Detective

25

that the gun belonged to petitioner. (D.I. 18, Appellant's App. to Op. Br. No. 252,2004, A-54, sheets 23-24) Additionally, as noted by the trial judge when he decided to permit the gun's admission into evidence despite the limitations of Detective Spillan's first testimony with respect to the identity of the gun's possessor, the "weakness" of the link went to the weight of the evidence and, therefore, was an issue for the jury to decide. (D.I. 18, Appellant's App. to Op. Br. No. 252,2004, A-54, sheet 14) The fact that the jury did not accept counsel's attempt to cast doubt on the identification of the gun as belonging to petitioner and credited Detective Spillan's testimony does not render trial counsel's performance deficient. Accordingly, the court concludes that the Delaware Supreme Court's denial of this first allegation did not involve an unreasonable application of *Strickland.*

## 2. Counsel's failure to interview or subpoena a key witness

One of the State's witnesses, Moina Tann, testified that, after Mercer's murder, he was driving in a car with petitioner, Evans, and an individual called Phil Kizee. Kizee was listed as a witness for the State but was never called to testify. Petitioner contends that trial counsel rendered ineffective assistance by failing to interview or subpoena Kizee as a witness, because Kizee's testimony would have contradicted Tann's account of what happened on the day of Mercer's death. (D.I. 8-1 at 5)

The Superior Court denied this claim for two reasons. First, given trial counsel's explanation that they made numerous attempts to contact Kizee, who was unresponsive, and their conclusion that Kizee would not have been a desirable witness due to his criminal history, the Superior Court concluded that counsel's decision not to subpoena Kizee was a tactical one. Second, the Superior Court concluded that

26

petitioner failed to demonstrate the requisite *Strickland* prejudice, because his belief regarding the positive effect of Kizee's testimony was merely conjecture. The Superior Court also noted that, given Kizee's prior criminal behavior with petitioner, the potential danger of Kizee's testimony far outweighed any potential benefit. *Hainey*, 2007 WL 2823329, at *3 (Del. Super. Ct. Sept. 24, 2007)

After reviewing the record, the court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in affirming the Superior Court's denial of this allegation. The decision regarding which witnesses to call is a strategic decision for defense counsel, not the defendant. *Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir.), *cert. denied, Scurlock v. United States*, 519 U.S. 1020 (1996). In turn, courts must be "highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). Considering counsel's numerous attempts to locate Kizee and Kizee's lack of cooperation, as well as Kizee's criminal history, counsel's decision not to call Kizee as a defense witness fell within the wide range of reasonable professional assistance contemplated by the first prong of the *Strickland* test.

Moreover, petitioner cannot demonstrate the necessary prejudice under *Strickland*. To begin, the court concurs with the Superior Court's conclusion that petitioner's contention that Kizee's testimony would have contradicted the testimony provided by Tann and the other prosecution witnesses is pure conjecture. Additionally, petitioner has not provided any argument casting doubt on counsel's conclusion that the fact that petitioner and Kizee knew each other because of their previous

commission of similar armed robberies would have placed petitioner in a less desirable light. For all of these reasons, the court concludes that the Delaware Supreme Court's decision did not involve an unreasonable determination of the facts in light of the evidence presented, nor did it involve an unreasonable application of *Strickland*.

### 3. Counsel's failure to file a motion for judgment of acquittal

In Delaware, a defendant's motion for acquittal filed pursuant to Delaware Superior Court Criminal Rule 29(a) may only be granted "if the evidence is insufficient to sustain a conviction of such offense or offenses." Del. Super. Ct. Crim. R. 29(a). A court reviewing a defendant's motion for judgment of acquittal pursuant to Rule 29 must "determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of a crime." *Winer v. State*, 950 A.2d. 642, 646 (Del. 2008). This standard is the same standard utilized by the Delaware Supreme Court when reviewing claims challenging the sufficiency of the evidence that are properly preserved and raised on a defendant's direct appeal. *See Johnson v. State*, 983 A.2d 904, 936 (2009).

Now, in his final complaint regarding trial counsel's performance, petitioner contends that counsel provided ineffective assistance by failing to file a Rule 29 motion for judgment of acquittal on all charges. Petitioner contends that trial counsel should have filed a Rule 29 motion arguing that the inconsistent testimonies and the jury's difficulty in reaching a verdict demonstrated that there was insufficient evidence to support any of his convictions.

Petitioner raised this same argument in his Rule 61 motion, and the Superior Court denied the claim after concluding that petitioner did not satisfy either prong of the *Strickland* test.[13] In holding that petitioner failed to demonstrate prejudice, the Superior Court stated that, "even if the motion had been made, it would have been denied as the State had clearly established its burden when evidence was considered in the light most favorable to them." *Hainey*, 2007 WL 2823329, at *3. The Delaware Supreme Court affirmed that judgment.

After reviewing the record, the court concludes that the Delaware Supreme Court's decision involved a reasonable application of *Strickland*. Significantly, petitioner raised the instant two arguments challenging the sufficiency of the evidence during his direct appeal. After reviewing the arguments de novo, the Delaware Supreme Court held that "a rational trier of fact could have believed [the testimony provided], which was sufficient to establish [petitioner's] guilt on all charges." *Hainey*, 878 A.2d at 432-33. Considering that the Delaware Supreme Court rejected petitioner's appellate challenge to the sufficiency of the evidence under the same standard of review that would have been applied to a Rule 29 motion raising the same challenge, petitioner cannot demonstrate that he suffered any prejudice from counsel's failure to file a Rule 29 motion.

The court also concludes that the decision issued by the Delaware Supreme Court was based upon a reasonable determination of the facts in light of the evidence

---

[13]The Superior Court's statement that trial counsel provided "ample explanation in their affidavits for the decision not to move for acquittal" demonstrates that the State Court implicitly found that counsel exercised objectively reasonable conduct by not filing a Rule 29 motion. *Id.*

presented by the parties. Accordingly, the court will deny this third allegation of ineffective assistance because petitioner has failed to satisfy the requirements of § 2254(d).

## D. Claim Four: Ineffective Assistance of Appellate Counsel

In his final claim, petitioner contends that appellate counsel rendered ineffective assistance by failing to appeal "four of the five arguments outlined in" petitioner's application, without actually identifying the claims he believed should have been raised on appeal. (D.I. 2 at 16) The court presumes that petitioner finds fault with appellate counsel for failing to raise all but the issue of appellate counsel's performance on direct appeal.

As with claims concerning the performance of trial attorneys, claims alleging ineffective of assistance of appellate counsel are also governed by *Strickland. United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000). Therefore, petitioner can only succeed by establishing a reasonable probability that he would have prevailed in his appeal but for appellate counsel's objectively unreasonable failure to raise claims one, two, and three on appeal.[14] *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000); *Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001). Petitioner, however, cannot satisfy this burden.

First, to the extent petitioner complains that counsel failed to challenge the sufficiency of the evidence on direct appeal, his argument is meritless; appellate

---

[14]Petitioner's application contains six claims. The court, however, combined the three ineffective assistance of trial counsel claims into one, leaving a total of four claims. Thus, although claim four refers to "four out of five arguments," it is really "three out of four arguments."

counsel actually did raise this argument on direct appeal.

Second, to the extent petitioner complains about appellate counsel's failure to raise the issue of trial counsel's ineffective assistance on direct appeal, the claim lacks merit because ineffective assistance of counsel claims cannot be raised on direct appeal in Delaware. Rather, they must be presented first to the Superior Court via a Rule 61 motion, and then presented to the Delaware Supreme Court on post-conviction appeal. *See Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

And finally, to the extent petitioner contends that he is entitled to habeas relief under § 2254(d) because the Delaware Supreme Court erred in holding that appellate counsel did not provide ineffective assistance by failing to argue on direct appeal that the improper admission of the gun at trial violated petitioner's right to due process, the court disagrees. In denying the instant allegation regarding appellate counsel's alleged failure, the Delaware Supreme Court identified *Strickland* as the proper standard and denied petitioner's allegation within its framework. Therefore, the Delaware Supreme Court's decision is not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Additionally, the Delaware Supreme Court did not unreasonably apply *Strickland* in denying this claim for lack of prejudice. *Hainey*, 2008 WL 836599, at \*1. It is well-settled that an attorney does not provide ineffective assistance by failing to raise non-meritorious issues on direct appeal. *See United States v. Sanders*, 165 F.3d 248, 253

(3d Cir. 1999). As explained by one of the Rule 61 affidavits provided by counsel during petitioner's Rule 61 proceeding,[15] both attorneys discussed appeal issues with petitioner and raised the issues on appeal that they thought were appropriate and had a valid legal basis. (D.I. 9, at A-36) Moreover, as set forth in the court's alternative de novo holding regarding claim two, petitioner's due process right to a fair trial was not violated as a result of the gun being admitted into evidence during his trial. *See supra* at 18 n.11. Consequently, petitioner cannot establish a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's failure to raise the meritless due process argument. Therefore, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this claim, and that its decision that was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding

Accordingly, the court will deny claim four for failing to satisfy § 2254(d).

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2008). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[15]The record provided by the State and the exhibits provided by petitioner contain only one Rule 61 affidavit.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.